[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in three counts against the defendant Frank Nappe individually and as agent, servant and employee of Frank Nappe Construction Co., Inc. The plaintiffs are the owners of real property located at 59 Angela Drive, East Haven and contracted with the Frank Nappe Construction Co., Inc. to build a one-family house at that address in September 1988.
The first count alleges a breach of contract, the second count seeks recovery for a CUTPA violation, and in the third count, the plaintiffs seek to pierce the corporate veil and hold the defendant Frank Nappe individually liable.
I
The plaintiff Jeanne Donarumo testified at length about this transaction, utilizing a daily calendar to refresh her recollection. On this calendar she recorded the progress of work, deliveries, etc. While the contract itself, dated September 21, 1988, is silent as to many key issues,, the defendant Nappe did sign an addendum on October 4, 1988 in which he agreed on behalf of the corporation to "complete all phases of the construction "on or before January 1st, 1989." While the defendants argue there was no consideration for this "modification," the plaintiffs claim it was in response to their expressed concerns about the lack of activity on the site.
While the defendants contended the breach, if any, was on the part of the plaintiffs, no defense was interposed as to the plaintiffs' allegations and the testimony of Jeanne Donarumo that the defendants caused a mechanic's lien to be placed on the property and that the local building inspector rejected some of the work and required it to be corrected. The court also finds it significant that these plaintiffs had paid the defendants $50,000 toward a $90,000 total price and well into the month of January 1989 had an incomplete shell with defective construction. The defendants' contention that he stopped work because the plaintiffs refused to pay him additional money is unconvincing. Of this $50,000 paid by the plaintiffs, the defendants only accounted for CT Page 5290 between $38,000 and $40,000, with the balance being withheld to apply toward profit.
It is the conclusion of the court that the defendants breached the contraction entered into with the plaintiffs.
II
It is undisputed that the plaintiffs had a mechanic's lien placed on their property and were obliged to defend a foreclosure of that lien because the defendants failed to pay a supplier. It is also undisputed that some of the work performed was found to be defective by the local building inspector. Corrective measures had to be taken by the plaintiffs and additional funds were expended.
The defendants did not deny these allegations nor offer any explanation.
 "It is well settled that in determining whether a practice violates CUTPA, the following criteria are to be employed: `(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' Conway v. Prestia, [191 Conn. 484, 492-03, 464 A.2d 847 (1983), quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45
n. 8, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) . . .,' McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558,, 568, 473 A.2d 1185 (1984); see also Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 756, 474 A.2d 780
(1984). Thus, a violation of CUTPA may be established by showing either an actual deceptive practice; see e.g., Sprayfoam, Inc. v. Durant's Rental Centers, Inc., 39 Conn. Sup. 78, CT Page 5291 4668 A.2d 951 (1983); or a practice amounting to a violation of public policy. See e.g., Sportsmen's Boating Corporation v. Hensley, supra."
Web Press Services Corporation v. New London Motors, Inc.,203 Conn. 342, 355 (1987).
Accepting the plaintiffs' money to pay for materials, and then not paying for the materials thus exposing them to litigation is deceptive. Similarly, failing to adhere to code requirements is a violation of public policy.
The acts of the defendants constitute unfair and deceptive practices in the conduct of a trade or business and violate the CUTPA, Sec. 42-110b.
III
The plaintiffs urge the court to hold the defendant Frank Nappe personally liable for the breach of contract and CUTPA violations.
The piercing of the corporate veil is equitable in nature.Angelo Tomasso, Inc. v. Armor Construction Paving, Inc.,187 Conn. 544, 555 (1982). The corporate veil will be pierced when "the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor."Falcone v. Night Watchman, Inc., 11 Conn. App. 218, 220 (1987). To hold a corporate officer personally liable for wrongdoing, there must be a sufficient factual basis for a court to pierce the corporate veil. Angelo Tomasso, Inc. v. Armor Construction Paving, Inc., supra, 561.
Frank Nappe was the majority stockholder of the corporation, entered into the contract in question on its behalf, and was the sole corporate representative negotiating, working, and collecting money.
Though he signed the contract as president of the corporation, all but one of the checks issued by the plaintiffs was payable to Frank Nappe, individually. Jeanne Donarumo testified that he directed her to make the checks payable to him. These checks were then cashed by Nappe and he collected the funds, treating the proceeds as his own. Even the single check payable to "Frank Nappe CT Page 5292 Construction" was endorsed by Nappe personally and cashed. Of the $50,000 paid by the plaintiffs, nothing was deposited in a corporate account and no corporate checks were produced indicating payments made by the corporation.
Of the acts complained of by the plaintiffs, that is, the breach of contract and the CUTPA violations, all were acts committed solely by the defendant Frank Nappe and lacked any participation or concurrence of any other corporate officer, stockholder, employee or agent.
The defendant Nappe also testified that as of the date of trial, May 12, 1994, the corporate tax returns for 1989 had not been filed. Real property adjacent to the subject property and intended for development was owned by Frank Nappe individually. No corporate records, minutes, or documents were produced at the trial and no evidence of the existence of a corporation was presented except for the statement of Frank Nappe that he incorporated in 1988.
In this case, it is incumbent upon the court to disregard the legal fiction created by the alleged incorporation. To do otherwise would permit the "corporate status" to be a device by which an ulterior purpose would be accomplished. Hoffman WallPaper Co., Inc. v. Hartford, 114 Conn. 531, 535 (1932).
It is therefore the conclusion of the court that the defendant Frank Nappe is personally liable to the plaintiffs for the breach of contract and CUTPA violations. He is therefore liable for the damage they incurred.
IV
The court awards the plaintiffs damages as follows:
 A. The plaintiffs expended $37,909.80 to finish the house in accordance with the contract. The defendants are entitled to a credit of $4,265.42 for the cost of air conditioning, that item not being in the defendants' contract. The total heating and air conditioning expenditure was $10,265.42, with the defendants budgeting $6,000 under the contract. The net damage awarded the plaintiffs is: .................... $33,644.38
CT Page 5293
 B. The plaintiffs incurred legal fees and had to pay costs to defend against the mechanics lien foreclosure. Costs incurred were $330, counsel fees, $532.50. The plaintiffs are awarded: ........................... $ 862.00
 C. The plaintiffs are awarded their counsel fees to pursue this action. Counsel's affidavit sets forth an amount which is found reasonable. For the CUTPA violations, counsel fees are awarded in the amount of: .... $ 5,854.50
 D. Punitive damages under CUTPA are awarded in the amount of: ..................... $ 6,000.00 TOTAL ................................. $46,361.38
Conclusion
Judgment may enter for the plaintiffs to recover of the defendants the sum of $46,361.38 plus taxable costs.