[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (MOTION TO STRIKE)
Pursuant to Practice Book § 10-39 et seq., the defendants A-Dan Realty and Joyce Bello have moved to strike Counts VII and X of the plaintiffs' complaint of April 28, 2000 arguing that the allegations of the complaint are legally insufficient to set forth a claim for violation of the Connecticut Unfair Trade Practices Act (hereinafter "CUTPA"), General Statutes § 42-110b.[1]
The plaintiffs commenced the present action against the defendants A-Dan Realty, Inc. and Joyce Bello and others claiming pecuniary losses and damages as a consequence of the plaintiffs' purchase of the premises at 20 Salem Road, Madison, Connecticut from the defendant, Eleanor Neveleff.
On or about October 14, 1998, the plaintiffs entered into a written real estate purchase agreement with Neveleff. The plaintiffs, as purchasers had a real estate agent, and the defendant Neveleff's real estate agent was the defendant Bello and her principal Century 21 A-Dan Realty. The plaintiffs retained the services of a home inspection service, Tiger Group, Inc. which is also a named defendant.
Pursuant to said real estate purchase agreement, the plaintiffs purchased the premises from Neveleff on or about November 20, 1998. Prior to the purchase the plaintiffs, along with their home inspector, inspected the premises on October 29, 1998. On that date, it is alleged that the water service to the premises was not turned on despite a prior request to do so by the plaintiffs' real estate agent and despite assurances by the homeowner Neveleff and her real estate agent, defendant Bello, that the water service to the premises would be turned on for the home inspection. It is further alleged that prior to the inspection date, the defendant Neveleff through her real estate agent, Bello, CT Page 9590 represented to the plaintiffs that there were no leakage and/or water problems or defects of any kind in regard to said premises, or in regard to the premises septic system." Additionally, it is alleged that the defendant Neveleff never completed or forwarded to the plaintiffs a written residential condition report as required by General Statutes § 20-327b.
In the two months following the plaintiffs' purchase of the subject premises during periods of rain, it is alleged that the plaintiffs experienced leakage in the basement of the home and its garage. An investigation of the leakage by the plaintiffs disclosed that it was caused by the "defective condition of said basement and garage, as well as the septic system and the grading and drainage of the premises."
The instant complaint presents claims for damages arising out of non-disclosure and misrepresentations made by the defendants regarding the defective condition of basement, the septic system and the grading and the drainage of the premises. Count VII presents a claim sounding in CUTPA arising out of misrepresentation while Count X presents a CUTPA claim arising from the alleged omissions or withholding of material information by the defendants Bello and A-Dan Realty, Inc.
 I
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. Aetna Life and Casualty Ins. Co.,13 Conn. App. 208, 211, 535 A.2d 390 (1988).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) Id. "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." Id. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541-50, 427 A.2d 822 (1980).
Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its CT Page 9591 legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., 196 Conn. 91, 108-09,491 A.2d 368 (1985). However, if the plaintiff has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. Cavallo v. Derby Savings Bank, 188 Conn. 281,285, 449 A.2d 986 (1982).
 II
The defendants correctly argue that any analysis of the allegations made in the complaint must be made in the context of statutes governing real estate brokers and their responsibilities and duties. General Statutes § 20-325d requires that a real estate salesperson or broker who acts as the agent of a seller must disclose this to the buyer unless the buyer is represented by another real estate salesperson or broker. The underlying regulation § 20-235d-1 et seq. provides for different types of agency relationships with differing duties and disclosure responsibilities. Section 20-325d-5 provides that the seller's agent acts in a fiduciary capacity for the seller in a real estate transaction. "The seller's agent owes the seller . . . undivided fiduciary obligations, such as: loyalty, reasonable care, disclosure, obedience to lawful instruction, confidentiality and accountability." The same conditions also apply to a real estate agent or broker who represents a buyer in a real estate transaction. It is noted that the plaintiffs and the defendant Neveleff were both represented by their own real estate agents in this transaction. However, despite the statutory provisions placing a real estate broker in a fiduciary capacity with either the seller or the buyer, the Department of Consumer Protection Regulations § 20-328-5a
provides that "a [real estate agent or broker] shall not misrepresent or conceal any material facts in any transaction." While § 20-325d-2 of said regulations also provides for dual agency agreements, as well as a buyer's agent and a seller's agent, it is important to note that the regulations provide that all real estate brokers, whether representing a buyer or a seller are obligated by law to treat all parties to a real estate transaction "honestly and fairly."
Clearly, as argued by the plaintiffs, the primary responsibility of the seller's agent is to arrive at a deal or transaction, which is most favorable to the seller, as the seller's agent is working in behalf of the seller. However, the fiduciary relationship arising between the seller's agent and seller does not give license for dishonesty, deception and sharp dealing. Therefore, it is within this statutory and regulatory CT Page 9592 context that the court examines the allegations of Counts VIII and X of the plaintiffs' complaint to see if they are sufficient to set forth claims for violation of CUTPA.
 III
The defendants Bello and A-Dan Realty claim that Counts VII and X do not contain sufficient particularity to support CUTPA claims. Specifically, the defendants argue that the counts merely insert the statement that the conduct cited in such counts was "immoral, oppressive and unscrupulous . . ." without providing sufficient factual allegations to support a CUTPA claim. A review of Counts VII and X however cite specific instances of misrepresentations by the defendants and misrepresentations by the withholding of material information. They satisfy the requirements of Practice Book § 10-1 which states "each pleading shall contain a concise statement of the material facts on which the pleader relies, but not of the evidence of which they are to be proved . . .", as well as the case law interpreting and analyzing CUTPA.
In determining whether or not allegations of a complaint state sufficient facts constitute a violation of CUTPA, our courts employ the "cigarette rule."
 "It is well settled that in determining whether [an act or] practice violates CUTPA we have "adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when [an act or] practice is unfair: `(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].' Normand Josef Enterprises v. Connecticut National Bank, 230 Conn. 486, 522, 646 A.2d 1289 (1994), citing Conaway v. Prestia, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45
n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). . . .'" McLaughlin Ford Inc. v. Ford Motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (1984).
 "`All three criteria do not need to be satisfied to CT Page 9593 support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59, 614, [and] 59, 635 (1978).' (Internal quotation marks omitted.) Id., 569 n. 15. `Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., Sprayfoam, Inc. v. Durant's Rental Centers, Inc., 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., Sportsmen's Boating Corporation v. Hensley, [192 Conn. 747, 474 A.2d 780 (1984)].' Web Press Services Corporation v. New London Motors, Inc., [supra, 203 Conn. 355]. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. See, id., 363 (knowledge of falsity, either constructive or actual), need not be proven to establish CUTPA violation)." Normand Josef Enterprises v. Connecticut National Bank, supra 230 Conn. 486, 522-523, quoting Cheshire Mortgage Service, Inc. v. Montes, supra, 223 Conn. 105-106.
The general rule is that mere nondisclosure does not ordinarily give rise to an action in fraud and misrepresentation. Egan v. Hudson NutProducts, Inc., 142 Conn. 344, 348, 114 A.2d 213 (1955); WatertownSavings Bankv. Mattoon, 78 Conn. 388, 393, 62 A. 622 (1905). "To constitute fraud the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." Egan v. Hudson Nut Products, Inc., supra, 142 Conn. 348. "A vendor of property may not do anything to conceal from the vendee a material fact affecting it . . . or deliberately hide defects, for, in so doing, he is not merely remaining silent, but is taking active steps to mislead." Id. at 348, quoting Gayne v. Smith, 104 Conn. 650, 652,134 A. 62.
In the present matter the plaintiffs have alleged that defendants Bello and/or A-Dan Realty did misrepresent the condition of the basement, septic system, water leakage and water problems at the premises on October 17, 1998 when the plaintiffs made inquiries. The plaintiffs allege that these representations by the defendants were intentional and were false representations of fact. Further, the plaintiffs have alleged that Bello and A-Dan Realty knew they were false at the time the CT Page 9594 defendants made them. Lastly, they allege that the representations were made to induce reliance by the plaintiffs, and that the plaintiffs did, in fact, rely upon these misleading representations to their detriment.Gelinas v. Gelinas, 10 Conn. App. 167, 173, 522 A.2d 167 (1987). "If the defendant does speak, he must disclose enough to keep his words from being misleading." Prosser and Keeton on the Law of Torts, at 738 (5th
ed. 1984). In addition, the seller of a property must not do anything to conceal from the buyer a material fact affecting it. Gayne v. Smith,104 Conn. 650, 652, 134 A. 62 (1926). The defendants, Bello and/or A-Dan Realty allegedly stated that the premises basement and septic system were satisfactory and that there were no water problems. Once the defendants made such assurances the obligation to disclose the actual defective conditions began. Wedig v. Brinster, 1 Conn. App. 123, 469 A.2d 783
(1983); Duska v. Middletown, 173 Conn. 124, 127, 376 A.2d 1099 (1977). The plaintiffs also allege that the defendants Bello and A-Dan Realty took affirmative steps to conceal the alleged defective conditions by failing to have the seller, Neveleff, execute a Residential Condition Disclosure Report and forward the same to the plaintiffs, as required by General Statutes § 20-372b.
The complaint when taken in a manner most favorable to the plaintiffs presents claims arising from misrepresentations by the defendants Bello and A-Dan Realty, and therefore, satisfies the "cigarette rule" of CUTPA analysis.
 IV
The defendants next argue that there is no appellate precedent in Connecticut addressing whether a single unfair or deceptive act can constitute a CUTPA violation. They argue that the allegations of the complaint must demonstrate that the particular conduct is a general practice of the defendants. A "practice" they contend is a custom or habit; something that is done frequently. A violation of CUTPA must be established by showing either an actual deceptive "practice" or a practice "amounting to a violation of public policy and in reference to a failure to disclose, there must be a duty to disclose. Willow SpringsCondominium Assn., Inc. v. Seventh BRT Development Corp., 245 Conn. 1,44, 717 A.2d 77 (1998); Daddona v. Liberty Mobile Home Sales, Inc.,209 Conn. 243, 257, 550 A.2d 1061 (1988). As the court has determined that there was a duty to disclose, a discussion regarding the application of CUTPA to isolated transactions is necessary. Additionally, the question remains as to whether alleged deceptive acts by the defendants violated public policy.
The majority of superior court decisions. have held that a litigant does not need to allege more than a single act of misconduct in order to CT Page 9595 bring an action under CUTPA. Slitz v. Pyramid Custom Home Corp. of Ct., Superior Court, judicial district of Danbury, Docket No. 323247 (April 4, 1997, Stodolink, J.). See, e.g., Abrams v. Riding High Dude Ranch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345046 (February 5, 1998, Skolnick, J.); Four Beaches Condominium Assn.V.W.C. Brescia Plumbing and Heating, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 384124 (May 23, 1997, Licari, J.); Michael J Stula Agency v. Wasniewski, Superior Court, judicial district of New London at New London, Docket No. 526137 (January 22, 1994, Austin, J.); Levesaue v. Kris Enterprises, Superior Court, judicial district of Litchfield, Docket No. 053776 (May 20, 1991, Susco, J.); Metpath, Inc. v. IDS Corp., Superior Court, judicial district of Hartford/New Britain at New Britain (March 12, 1991, Aronson, J).
In Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243,550 A.2d 1061 (1998), the Supreme Court held that a single instance of misconduct can be a violation of CUTPA. The Court found that a violation of CUTPA existed where the defendant dismantled the plaintiff's mobile home rather than evicting her. Id. at 257-58. The court reasoned that "CUTPA was designed to protect the public from unfair practices, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy. . . . [A] violation of CUTPA can be found . . . where the defendant's actions violate t public policy. . . ." Id;Roache v. Rogers, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV98 0354114, (July 26, 1999, Skolnick, J.).
Therefore, it is the violation of public policy, and not the number of incidents, that creates the factual predicate for a claim of a CUTPA violation. Roache v. Rogers, supra. Moreover, CUTPA is a remedial statute and should be liberally construed. Web Press Services Corporation v. NewLondon Motors, 203 Conn. 342, 354, 525 A.2d 57 (1987).
A distinguishing factor in this case is that the defendants Bello and A-Dan Realty are, as the plaintiffs argue, commercial actors. They are a real estate agent and a real estate agency holding themselves out for hire to the public for assistance in real estate purchases and sales. They are not individuals selling a single residence in a limited nonrepetitive transaction. Their activities are commercial in nature and are ongoing by their nature. Their business and activities are regulated by statute and regulations. The type of activity presented by the complaint and the type of harm alleged by the plaintiffs as a consequence of such activity is the type of harm which CUTPA and the statutes and regulations regarding real estate agents and brokers were intended to remedy as a matter of public policy. CUTPA is remedial in nature and it is to be applied liberally. CT Page 9596
The court finds that in this instance CUTPA can apply to the home purchase transaction involving the defendant real estate agent Bello and her principal real estate agency, A-Dan Realty.
Accordingly, the motion to strike Counts VII and X of the plaintiffs' complaint alleging CUTPA violations is hereby denied.
The Court
by ______________
Arnold, J.